UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| CASON MADDISON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:25-cv-364-M |
| FLYEXCLUSIVE, INC. and | ) | |
| THOMAS JAMES SEGRAVE, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendants FlyExclusive, Inc. ("FlyExclusive" or the "Company") and Thomas James Segrave, Jr. ("Segrave") (collectively, "Defendants"), by and through their undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby submit this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a claim.

## INTRODUCTION

FlyExclusive is a private jet services company based in Kinston, North Carolina. FlyExclusive recruited Cason Maddison ("Plaintiff") to join the Company as Senior Vice President in August 2021. Plaintiff worked for FlyExclusive for less than three years, from August 2021 until she resigned in April 2024. Based on her own allegations, Plaintiff acknowledges that FlyExclusive recognized Plaintiff's contributions to the Company over the course of her short tenure by promoting her from Senior Vice President to Chief Administrative Officer, as well as by paying her corresponding salary increases. Nevertheless, in April 2024, Plaintiff voluntarily resigned from her employment at FlyExclusive.

Plaintiff commenced this action on June 25, 2025, asserting nine claims against Defendants. Specifically, in her Complaint, Plaintiff has asserted claims for: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") against FlyExclusive; (2) constructive discharge in violation of Title VII against FlyExclusive; (3) violation of the North Carolina Wage & Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.* against both Defendants; (4) fraud against both Defendants; (5) negligent misrepresentation against both Defendants; (6) breach of contract against FlyExclusive; (7) breach of the covenant of good faith and fair dealing against FlyExclusive; (8) unjust enrichment against both Defendants; and (9) tortious interference with contract against Segrave.

None of these claims are validly pled. At its core, this is a case about a highly compensated employee who has attempted to cobble together several causes of action from a collection of vague, non-actionable grievances against her former employer. Even assuming the truth of Plaintiff's allegations, Plaintiff has failed to plead a valid claim as to any of the nine counts contained in her Complaint. Defendants respectfully request that the Court dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTS AND PROCEDURAL HISTORY

In her Complaint, Plaintiff alleges that her employment with FlyExclusive began in August 2021, after FlyExclusive recruited her to join the Company in the position of Senior Vice President, Strategic Business Planning & Analysis. DE 1 at ¶ 14.[1] FlyExclusive is a publicly-traded company based in Kinston, North Carolina, that serves as a premier owner and operator of private

---

[1] As required pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, Defendants assume the truth of the allegations pled in the Complaint solely for the purpose this Motion to Dismiss. Although not relevant for the purposes of this Motion, Defendants deny all of the material allegations of Plaintiff's Complaint, deny all liability to Plaintiff, and deny that Plaintiff is entitled to any relief whatsoever.

jet experiences.[2]  Defendant Segrave is FlyExclusive's founder, Chief Executive Officer, and Board Chairman.  DE 1 at ¶ 6.

According to Plaintiff, she decided to leave her former position at a boutique merchant bank after Defendants represented to her during preemployment discussions that in her role at FlyExclusive, she "would receive the support, resources, and compensation commensurate with her role and success."  DE 1 at ¶ 16.  Specifically, Plaintiff contends that during these pre-hire communications, Defendant allegedly represented to her that she would have her "superiors' full support," would receive "significant additional pay" if required to perform work outside her position's scope, that FlyExclusive "would comply" with its "legal, ethical, and moral obligations," and that FlyExclusive would "implement its contractual and other promises in good-faith."  DE 1 at ¶ 16.  Plaintiff alleges that she was already familiar with FlyExclusive before joining the Company, having worked with the Company in her former role at the merchant bank.  DE 1 at ¶ 15.

In her role as Senior Vice President, Plaintiff was responsible for working with employees and advisors to "pursue strategic growth opportunities," and was also tasked with working on the Company's efforts to seek public status through a special purpose acquisition company (a "SPAC").  DE 1 at ¶¶ 1, 21.  Plaintiff further alleges that in December 2023, the Company's SPAC transaction closed.  DE 1 at ¶ 23.  In acknowledgement of Plaintiff's efforts on the SPAC transaction, the Company publicly recognized her during the New York Stock Exchange

---

[2] Defendants request that the Court take judicial notice of FlyExclusive's corporate structure, as well as the fact that FlyExclusive offers private jet services.  In ruling upon a motion to dismiss under Rule 12(b)(6), courts may consider matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Philips v. Pitt Cnty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009) ("[I]n reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.") (citation omitted); *Blue Coral, LLC v. W. Bend Mut. Ins. Co*., 533 F. Supp. 3d 279, 281 n.2 (E.D.N.C. 2021).

bell-ringing ceremony and offered to increase her salary. DE 1 at ¶¶ 22–23. During the SPAC negotiations and in recognition of Plaintiff's efforts toward the SPAC closing, the Company also promoted Plaintiff from Vice President to an executive role as Chief Administrative Officer ("CAO") and Corporate Secretary in October 2023. DE 1 at ¶ 37, 41.

Thereafter, in or around March 2024, the position of President at FlyExclusive became vacant. DE 1 at ¶ 44. Although Plaintiff alleges that she "advised" the Vice Chairman of the Company's Board of Directors about her "interest" in the position, Plaintiff has failed to allege that she applied for this open position. DE 1 at ¶¶ 44–46. Then, in April 2024—less than three years after joining FlyExclusive and less than one year after receiving her promotion to the CAO role—Plaintiff submitted her resignation from the Company, effective April 18, 2024. DE 1 at ¶ 50. According to Plaintiff, she resigned due to the "aggregate distress" she experienced while working at the Company—though Plaintiff by her own admission also alleges that she "thrived" in her role at FlyExclusive. DE 1 at ¶¶ 29, 50.

On June 25, 2025, Plaintiff filed her Complaint in this action in the United States District Court for the Eastern District of North Carolina. DE 1. Defendants hereby request that the Court dismiss Plaintiff's Complaint, in its entirety, for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). Although "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), the court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable

conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## ARGUMENT

Plaintiff's Complaint is replete with conclusory allegations and bald assertions that fail to satisfy federal pleading requirements under Rule 12(b)(6), *Twombly*, and *Iqbal*. As described below, the allegations in Plaintiff's Complaint in support of each of her nine counts fail to establish a plausible basis for any of the claims asserted against Defendants.

## I. Plaintiff Fails to State a Sex Discrimination Claim Under Title VII.

Count One in Plaintiff's Complaint alleging sex discrimination in violation of Title VII against FlyExclusive should be dismissed for failure to state a claim. Plaintiff alleges that FlyExclusive discriminated against her based on her sex in three ways: (1) by "denying her promotion to President"; (2) by "subjecting her to a hostile work environment"; and (3) by "otherwise taking adverse employment actions against" her. DE 1 at ¶ 53. Each of these allegations fails to support a valid claim under Title VII.

### A. Plaintiff Has Not Stated a Claim Based on Failure to Promote.

Plaintiff first alleges that FlyExclusive violated Title VII by "denying her promotion to President." DE 1 at ¶ 53. According to Plaintiff, in March 2024, the "role of President became available" and she "advised" Tom Segrave, the Vice Chairman of the Company's Board of Directors, "about her interest in the vacant President position." DE 1 at ¶ 45. Plaintiff alleges that Tom Segrave then "swiftly dismissed" Plaintiff's interest. DE 1 at ¶ 46. These allegations are insufficient to establish a *prima facie* failure-to-promote claim under Title VII, which requires that the plaintiff allege: (1) that she belongs to a protected class; (2) that she applied for the position at issue; (3) that she was qualified for the job; and (4) that the company rejected her application under circumstances supporting an inference of unlawful discrimination. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 319 n.6 (4th Cir. 2005). Plaintiff has failed to allege facts in the Complaint supporting the second, third, and fourth elements.

As to the second element of her failure-to-promote claim, Plaintiff has not alleged anywhere in her Complaint that she ever applied for the open President role. Instead, she merely alleges that she "advised" the Board's Vice Chairman about her "interest" in the position. DE 1 at ¶ 45. Nowhere in the Complaint does she state that she submitted an application or took any action beyond expressing her interest to a single Board member. Similarly, with respect to the third element—qualification for the job—Plaintiff merely states, without providing any supporting facts, that she was "plainly qualified" for the role. DE 1 at ¶ 44. Plaintiff in no way explains how she was qualified to serve as President, especially given that, by Plaintiff's own characterization of the facts, she had only served in an executive role for a few months at the time the President position became open. DE 1 at ¶¶ 41, 44. Plaintiff failed to allege whether she had any industry experience apart from her employment at FlyExclusive, or whether she had any management experience in any of her previous positions.

Finally, Plaintiff has not established the fourth element of a Title VII claim for failure to promote, which requires her to show that the Company rejected her application "under circumstances that give rise to an inference of unlawful discrimination." *Diamond*, 416 F.3d at 319 n.6. Plaintiff has not alleged that the Company ever rejected her application, much less that the Company did so under circumstances that were at all suggestive of discriminatory animus. Plaintiff has failed to allege who ultimately was hired into the President role or whether this position was even filled prior to her voluntary resignation. Plaintiff's conclusory allegations are facially insufficient to satisfy federal pleading requirements.

The only factual allegation that Plaintiff points to in support of her contention that FlyExclusive passed her over for promotion on the basis of her sex is an alleged statement by Tom Segrave that Jim Segrave needed "men right outside his office who were easily accessible and who he could go to lunch with." DE 1 at ¶ 46.[3] However, even accepting the truth of this allegation, as a matter of law the generic use of the term "men" to refer to employees—and this isolated comment alone—is insufficient to create any inference of discriminatory animus. *See Douglas v. PHH FleetAmerica Corp.*, 832 F. Supp. 1002, 1010 (D. Md. 1993) ("The innocuous statement by [employee] that he preferred to 'sit around with the guys' is not evidence of an intention on his part to invidiously discriminate against an employee.").

North Carolina courts routinely dismiss Title VII claims for failure to promote where the plaintiff fails to allege specific facts supporting each of the elements of the plaintiff's *prima facie* case. *See, e.g.*, *Batchelor v. City of Wilson*, 747 F. Supp. 3d 845, 860 (E.D.N.C. 2024) (dismissing claim where plaintiff "simply speculat[ed] that the [employer] did not select her [for the

---

[3] Although not relevant for the purposes of this Motion, Defendants deny that Tom Segrave told Plaintiff that Jim Segrave needed "men right outside his office who were easily accessible and who he could go to lunch with," as alleged in Plaintiff's Complaint.

promotion] . . . because of her sex"); *Griffin v. Maximus Inc.*, 641 F. Supp. 3d 251, 256 (W.D.N.C. 2022) (dismissing claim where plaintiff failed to allege facts supporting "that he was qualified for the positions at issue"); *Fulmore v. City of Greensboro*, 834 F. Supp. 2d 396, 420 (M.D.N.C. 2011) (dismissing claim where plaintiff did not "allege any specific instance" where he "applied for [the position] and was rejected"); *Smith v. Lowes Cos., Inc.*, 638 F. Supp. 3d 572, 577 (W.D.N.C. 2022) ("The Plaintiff's vague and conclusory allegations fail to plausibly claim that there was a specific position for which he applied, and for which he was qualified, or that his application was rejected under any circumstances giving rise to an inference of discrimination."). Like the plaintiffs in *Batchelor*, *Griffin*, *Fulmore*, and *Smith*, Plaintiff has only alleged bare "labels and conclusions" that fail to "raise a right to relief above the speculative level." *Fulmore*, 834 F. Supp. 2d at 420 (quoting *Twombly*, 550 U.S. at 555, 570). As such, this Court should dismiss Plaintiff's failure-to-promote claim.

> **B.      Plaintiff Has Not Stated a Claim Based on a Hostile Work Environment.**

Plaintiff next alleges that FlyExclusive violated Title VII by "subjecting her to a hostile work environment." DE 1 at ¶ 53. Specifically, Plaintiff alleges that FlyExclusive created a hostile work environment by "favor[ing] men," "relegat[ing]" female employees to "lower-level jobs," excluding her from "executive leadership meetings," and treating her as "inferior to her male counterparts." DE 1 at ¶ 54. These allegations fail to establish facts sufficient to satisfy the elements of a hostile work environment under Title VII.

A hostile work environment exists under Title VII when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). Thus, in order to establish a hostile work environment claim, a plaintiff must show that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [sex];

(3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). Here, even assuming that Plaintiff has established the first, second, and fourth elements, Plaintiff has failed to adequately plead the third element of this claim.

Plaintiff's allegations in the Complaint fall far short of adequately pleading "severe or pervasive" harassment. The Fourth Circuit has made clear that "severe or pervasive" conduct amounting to a hostile work environment requires plaintiffs to "clear a high bar." *EEOC v. Sunbelt Rentals*, 521 F.3d 306, 315 (4th Cir. 2008) (internal alterations omitted). Conduct must be assessed based on "all the circumstances," including its "frequency," its "severity," whether it is "physically threatening or humiliating, or a mere offensive utterance," and whether it "unreasonably interferes with an employee's work performance." *Boyer-Liberto*, 786 F.3d at 277. Furthermore, "[e]ven conduct that would objectively cause hurt feelings or offense is not enough" to establish a claim under Title VII. *Id.* at 408. For this reason, North Carolina federal courts have routinely rejected hostile work environment claims alleging conduct much more inflammatory than what Plaintiff alleges in her Complaint—including cases involving "three uses of the [n-word]" and a case involving a coworker calling the plaintiff a "black b****" and "black heifer"—for failing to establish severe or pervasive conduct. *See Whitfield v. DLP Wilson Medical Center, LLC*, 482 F. Supp. 3d 485, 492 (E.D.N.C. 2020); *Parks v. Louisiana-Pacific Corp.*, 400 F. Supp. 3d 393, 409 (W.D.N.C. 2019).

In stark contrast, here Plaintiff only includes vague allegations that FlyExclusive favored men over women and treated her in a manner "inferior to her male counterparts." DE 1 at ¶ 54. But "general, vague allegations" about discriminatory conduct do not meet the high bar required

to allege a hostile work environment claim under Title VII. *Torres v. Duke Energy Progress, LLC*, 688 F. Supp. 3d 307, 313 (E.D.N.C. 2023). Furthermore, the other allegations in support of Plaintiff's hostile work environment claim—that FlyExclusive relegated other employees to "lower-level jobs" and failed to "consider or appoint female members to FlyExclusive's Board of Directors"—involve *other* employees, not Plaintiff herself. DE 1 at ¶¶ 43, 54. In this respect, the Fourth Circuit has made clear that "[t]he inquiry into objectively severe or pervasive abusive conduct must focus on the events *that the plaintiff personally experienced*." *McIver v. Bridgestone Am., Inc.*, 42 F.4th 398, 408 (4th Cir. 2022) (emphasis added).

This leaves only Plaintiff's allegation that she was "excluded from executive leadership meetings." DE 1 at ¶ 54. Even assuming that this allegation is true, exclusion from meetings alone falls far short of the "physically threatening or humiliating" conduct required to state a hostile work environment claim. *Boyer-Liberto*, 786 F.3d at 277. Indeed, courts have repeatedly rejected hostile work environment claims predicated on an employee's exclusion from meetings. *See, e.g.*, *White v. Caterpillar Logistics, Inc.*, 67 F. Supp. 3d 713, 727 (E.D.N.C. 2014); *Mack v. East Carolina Univ.*, 2022 WL 945595, at *6 (E.D.N.C. March 29, 2022); *Alexander v. City of Greensboro*, 2013 WL 6687237, at *21 (M.D.N.C. Dec. 18, 2013) ("plaintiffs' evidence that high-ranking . . . officers . . . were excluded from secret meetings . . . fails to show any altering of [plaintiffs'] working conditions"). At bottom, Plaintiff's allegations amount to generalized, non-actionable grievances about FlyExclusive's workplace, and as such, her harassment claim should be dismissed.

### C.  Plaintiff Has Not Stated a Claim Based on Other Alleged Employment Actions.

In support of her sex discrimination claim in Count I, Plaintiff also includes a vague allegation that FlyExclusive "otherwise [took] adverse employment actions against [her]." DE 1

at ¶ 54. Plaintiff's Title VII claim premised on such other "adverse employment actions" must be dismissed for two reasons: (1) this allegation fails to meet the threshold requirements for stating a Title VII discrimination claim; and (2) to the extent Plaintiff premises this claim on FlyExclusive's alleged failure to pay her a bonus that it paid male employees, any such claim is administratively barred and inadequately pled.

First, Plaintiff's allegation that FlyExclusive violated Title VII based on "otherwise taking adverse employment actions against [her]" fails to meet the most basic pleading requirements under Title VII. Title VII "affords no protection from discrimination unless there has been some adverse employment action by the employer." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). Plaintiff cannot satisfy this threshold pleading requirement by alleging, in an entirely conclusory manner, that FlyExclusive took some undisclosed "adverse employment actions against [her]." DE 1 at ¶ 53.

Second, to the extent that Plaintiff attempts to premise her Title VII discrimination claim on her allegations elsewhere in the Complaint that FlyExclusive failed to pay her a bonus that it paid male employees, any such claim is administratively barred. As the Fourth Circuit has repeatedly emphasized, "[i]t is well settled that before filing suit under Title VII . . . a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). When a plaintiff brings a charge with the EEOC, that charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). This is because "[t]he EEOC charge defines the scope of the plaintiff's right to institute a civil suit," *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Any "claims raised . . . [that] exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . are procedurally barred." *Dennis*

*v. County of Fairfax*, 55 F. 3d 151, 156 (4th Cir. 1995).

Here, although Plaintiff alleges in her Complaint that after the SPAC closing in December 2023, FlyExclusive failed to pay her a "promised bonus and equity" even though it "paid [its] male executives handsomely in salary and bonus," DE 1 at ¶ 23, she included no such allegations in her EEOC Charge, attached hereto as **Exhibit A**.[4]  Instead, in the Charge, Plaintiff premised her Title VII sex discrimination claims on FlyExclusive's failure to promote her to the vacant President role in March 2024.  While Plaintiff includes in the Charge vague statements that FlyExclusive "failed to pay [her] what [she] was owed," she did not allege anywhere in the Charge that the Company failed to pay her a bonus in 2023 that it paid to male employees.

Moreover, Plaintiff's claim that FlyExclusive failed to pay her a bonus that it paid to male employees is wholly distinct from her failure-to-promote claim.  Because the allegations in Plaintiff's Complaint are devoid of any claims of sex-based disparity in bonus compensation, Plaintiff failed to put FlyExclusive on notice of her compensation-related claims.  As such, Plaintiff has failed to administratively exhaust any sex discrimination claim based on the 2023 bonus.  Indeed, courts in this Circuit have dismissed pay-related Title VII claims as administratively barred where the plaintiff failed to raise the claims in the initial charge.  For example, in *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996), the Fourth Circuit affirmed the district court's dismissal of a plaintiff's pay and benefit discrimination claims under Title VII where the plaintiff only alleged in her administrative charge that the defendant "failed to promote her . . . because of her sex."  *Id.* at 963; *see also Brown v. Inst. For*

---

[4] In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss so long as they are integral to the complaint and authentic. Fed. R. Civ. P. 10(c); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Plaintiff references her EEOC Charge in her Complaint, *see* DE 1 at ¶ 11, and the Charge forms the basis for her claims in this action.  Therefore, the Court may consider it here.

*Fam. Centered Servs., Inc.*, 394 F. Supp. 2d 724, (M.D.N.C. 2005) ("Plaintiff's claim for discriminatory pay practices is not reasonably related to her charge of wrongful termination because it is based on a different theory of discrimination."). This Court should likewise dismiss Plaintiff's claim as administratively barred.

Even if Plaintiff's purported discrimination claim based on Fly Exclusive's alleged failure to pay "promised bonuses" was not administratively barred, any such allegations likewise fail to satisfy federal pleading requirements. Again, Plaintiff's Complaint contains no underlying facts supporting Plaintiff's conclusory assertions of discrimination, apart from the bare assertion that undisclosed "male executives" received "handsome" bonuses. DE 1 at ¶ 23. Specifically, Plaintiff's Complaint is completely devoid of any facts identifying: the "male executives" at issue, either by name or title; the terms of their alleged entitlement to bonus compensation; whether Plaintiff was entitled to such compensation on the same terms; the amount of any such bonus compensation; the time periods during which the alleged bonuses were paid; or any other facts that in way create even a bare inference of discrimination on the basis of sex. Indeed, based on the Complaint's lack of detail, it is impossible to determine whether the denial of the alleged "bonus" payments at issue constituted an adverse employment action at all. *Harris v. The Vanguard Group, Inc.*, 2015 WL 9685565, at *3–4 (W.D.N.C. Nov. 6, 2015) (holding that denial of merit-based bonus did not constitute adverse employment action); *Scott v. Teachers Ins. and Annuity Ass'n of America*, 2013 WL 2948315, at *6 (W.D.N.C. June 14, 2013) (dismissing plaintiff's claims for failure to state a claim, and noting that the "the non-receipt of a discretionary bonus does not constitute an adverse employment action.").[5]

---

[5] The Complaint's complete lack of detail regarding the alleged unpaid bonus at issue also makes it impossible for either Defendants or the Court to determine whether Plaintiff timely filed her Charge within 180 days of the alleged discriminatory action, as required under Title VII. 42 U.S.C. § 2000e–5(e)(1); *EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 110 (1988).

## II. Plaintiff Fails to State a Claim for Constructive Discharge Under Title VII.

Count II of Plaintiff's Complaint alleges that Fly Exclusive constructively discharged her in violation of Title VII. *See* DE 1 at ¶ 65. According to Plaintiff, she tendered her resignation in April 2024 not by choice, but because of the "aggregate distress caused by Defendants' actions." DE 1 at ¶ 50. Like Count I, Plaintiff's constructive discharge allegations fail to state a claim under Title VII and must be dismissed.

In order to state a claim for constructive discharge under Title VII, plaintiffs must allege that their employer made working conditions "so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). Importantly, this Court has instructed that "stating a claim of constructive discharge under Title VII requires *more* than is required to state a hostile work environment claim under Title VII." *Webster v. Town of Warsaw*, 66 F. Supp. 3d 706, 708–09 (E.D.N.C. 2014) (emphasis added). Thus, "a plaintiff who fails to plausibly allege . . . a hostile work environment under Title VII, by definition, fails to plausibly allege working conditions sufficient to prove constructive discharge under Title VII." *Id.* at 709. As described above, Plaintiff failed to clear the "high bar" required to adequately plead a hostile work environment claim, *Sunbelt Rentals*, 521 F.3d at 315, which means that "by definition," she has failed to adequately plead a constructive discharge claim. *Webster*, 66 F. Supp. 3d at 709.

On their face, the allegations in the Complaint do not establish that FlyExclusive made Plaintiff's working conditions "so intolerable" that a reasonable person would have felt no choice but to resign. *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). Plaintiff alleges that Defendant's failure to promote her to President, failure to pay her additional compensation after the SPAC transaction, failure to invite her to weekly meetings, and demands that she provide "high-level work" for the Company "forced her to submit her involuntary resignation." DE 1 at

¶¶ 23, 35, 42, 44, 50.  At most, these allegations amount only to "dissatisfaction with work assignments" and "difficult or unpleasant working conditions," which the Fourth Circuit has long held do not establish a claim for constructive discharge.  *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004); *see also Bristow*, 770 F.2d at 1255 (noting that under Title VII employees are not "guaranteed a working environment free of stress").  Furthermore, although Plaintiff alleges that FlyExclusive's failure to promote her and grant her *additional* compensation constituted constructive discharge, the Fourth Circuit has held that even a "slight *decrease* in pay coupled with some *loss* of supervisory responsibility is insufficient evidence of constructive discharge."  *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994) (emphasis added).  Indeed, the Fourth Circuit has instructed that courts must "carefully cabin[]" constructive discharge claims because the claim is "so open to abuse by those who leave employment of their own accord."  *Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir. 1989).  Plaintiff's claim, which is wholly unsupported by allegations of an unlawfully intolerable work environment, constitutes the very "abuse" the Fourth Circuit has warned against and should be dismissed.

## III.    Plaintiff Fails to State a Claim Under the North Carolina Wage & Hour Act.

Count III of Plaintiff's Complaint, which alleges that Defendants violated the North Carolina Wage & Hour Act (the "NCWHA"), should be dismissed for two reasons.  First, Plaintiff's NCWHA claim against both Defendants should be dismissed because Plaintiff failed to adequately plead the terms of her "promised" bonus and equity compensation.  Second, Plaintiff's NCWHA claim against Segrave should be dismissed because she has not alleged facts demonstrating that Segrave was her "employer" for NCWHA purposes.

Plaintiff's NCWHA claim against both Defendants must be dismissed because Plaintiff fails to allege any details regarding the terms of the allegedly promised bonus and equity compensation.  The NCWHA provides that each employer "shall pay every employee all

wages . . . accruing to the employee," and defines "wages" to include "bonuses" where "promised when the employer has a policy or a practice of making such payments." N.C. Gen. Stat. §§ 95-25.2(16); 95-25.6. For this reason, North Carolina courts have explained that employers must pay bonuses due "when the employee has actually performed the work required to earn them." *Narron v. Hardee's Food Sys., Inc.*, 75 N.C. App. 579, 583 (1985).

Here, Plaintiff has not alleged facts regarding the terms of any bonus that Defendants "promised" her, that Defendants had any "policy or practice of making" such bonus payments, or that she performed any work required to earn the allegedly "promised" bonus. Instead, she merely cites a September 21, 2023 email from Segrave allegedly stating that the Company would provide her with a "50% bonus opportunity" that would be "largely based on profitability and partly based on deliverables," a $50,000 bonus that the former Company CFO "agreed" to pay her, and unspecified "equity in the form of stock at closing." DE 1 at ¶ 22. These allegations—and in particular the reference to a vague "bonus opportunity" and unspecified "equity"—do not establish the terms of the bonus, the total amount of the bonus, whether Plaintiff accepted the alleged "offer" at issue, or what work would be required in order to earn the alleged bonus. For example, although the quoted email states that Plaintiff would have the "opportunity" to earn a bonus based on "profitability" and "deliverables," Plaintiff has not alleged what specific profit or deliverable metrics the Company would use to calculate the bonus, or whether she in fact performed the work required to satisfy those metrics.

Compounding these pleading deficiencies, Plaintiff has selectively cherry-picked quotations from the September 21, 2023 email exchange at issue, in which FlyExclusive allegedly promised certain compensation to her. The full email exchange between FlyExclusive and

Plaintiff on September 21, 2023 is attached to this Memorandum as **Exhibit B**.[6] A cursory review of the unredacted September 21, 2023 email exchange demonstrates that: 1) Plaintiff did not accept the offer contained in FlyExclusive's email dated September 21, 2023, and rather continued to negotiate the terms of her compensation (the terms of which still have not been pled); 2) after Plaintiff rejected FlyExclusive's offer, Segrave instructed Plaintiff to continue negotiating the terms of her increased compensation with FlyExclusive's Chief Financial Officer; and 3) Segrave expressly informed Plaintiff that, with respect to any future grant of stock, "[t]his will be a board level discussion and a decision I expect to make with the board[']s advice." Plaintiff has not pled whether this future stock plan was approved by the Company's board of directors or implemented prior to her voluntarily resignation.

North Carolina courts have repeatedly dismissed NCWHA claims where plaintiffs failed to allege specific bonus terms establishing that the promised bonus was anything more than a discretionary payment not guaranteed by the employer and incapable of calculation. North Carolina courts have also consistently interpreted the NCWHA to exclude recovery of future, unearned wages. *See Whitley v. Horton,* 168 N.C. App. 597, 608 S.E.2d 416, at *5

---

[6] This Court may consider the full email exchange dated September 21, 2023 (even though Plaintiff has not attached it to her Complaint), because the exchange is integral to the Complaint, forms the apparent basis for Plaintiff's NCWHA and breach of contract claims, and is referenced throughout the Complaint. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (explaining that courts may consider documents "not attached to or expressly incorporated in a complaint" if the document is "integral to the complaint and there is no dispute about the document's authenticity"); *Soliman v. Worldwide Language Res., Inc.*, 2016 WL 7494858, at *1 n.1 (E.D.N.C. Dec. 29, 2016) (considering two emails attached to defendant's 12(b)(6) motion to dismiss where plaintiff's complaint referenced the emails). Furthermore, Plaintiff apparently contends that the September 21, 2023 email exchange formed a contract between Plaintiff and FlyExclusive, and it is well established that courts may consider the full terms of an alleged contract at the motion to dismiss stage without converting a motion under Rule 12(b)(6) into a motion for summary judgment. *See, e.g.*, *Brentzel v. Fairfax Transfer & Storage, Inc.*, 2021 WL 6138286, at *3 (4th Cir. Dec. 29, 2021) (holding that district court properly considered contract attached to defendant's 12(b)(6) motion where the document was "necessary to determine the scope of liability and the details of the agreement between the parties").

(2005) (unpublished) ("[A]lthough the [Act's] definition [of wages] is broad enough to include things like 'sick pay' 'bonuses' or 'other amounts promised,' such items are compensable *only if the employee has actually worked the hours to earn the wages*") (emphasis added)). For example, in *Moses H. Cone Memorial Health Services Corp. v. Triplett*, 167 N.C. App. 267 (2004), the North Carolina Court of Appeals held that an employer did not violate the NCWHA by reducing an employee's bonus where the "bonus was not quantifiable" and "had not accrued at the time of the change." *Id.* at 273. Similarly, in *McCabe v. Abbott Laboratories*, 47 F. Supp. 3d 339, 347 (E.D.N.C. 2014), the plaintiff alleged that the employer violated the NCWHA by failing to pay certain quarterly sales bonuses. *Id.* at 347. The court rejected this argument, holding that the fact that the employer made clear in its bonus documents and presentations that it "reserved discretion" in the payment of the bonus "defeat[ed]" the plaintiff's NCWHA claim. *Id.*; *see also Gallaher v. Ciszek*, No. 19 CVS 5780, 2022 WL 16727920, at *14 (N.C. Super. Nov. 4, 2022) ("The payment of any bonus was within [employer's] discretion and was not guaranteed. As such, no bonus was capable of calculation."). Plaintiff has failed to adequately plead any plausible claim for relief, and her NCWHA claim against both Defendants should be dismissed.

Plaintiff's NCWHA claim against Segrave should be dismissed for the additional reason that she has failed to allege facts demonstrating that Segrave is individually liable for any NCWHA violation. The NCWHA provides for recovery of an employee's unpaid wages against an "employer," and "under certain conditions, individuals may be subjected to liability for unpaid wages" when they constitute an "employer." *Powell v. P2Enterprises, LLC*, 247 N.C. App. 731, 733–34 (2016). But in order to establish that an individual constitutes an "employer" under the NCWHA, the employee must show that the individual had the "power to hire and fire" the employee, "supervised and controlled" conditions of employment, "determined the rate and

method of payment," and "maintained employment records." *Id.* at 735. Applying this test, courts reject NCWHA claims where plaintiffs fail to offer any facts establishing the alleged employer's degree of control over the employee. *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 721 (E.D.N.C. 2009); *Marshall v. C&S Rail Svs., LLC*, No. 1:19-CV-986, 2021 WL 1341801, at *9 (M.D.N.C. Apr. 9, 2021). Here, Plaintiff has not alleged any facts supporting that Segrave— was her "employer" and therefore subject to individual liability for any unpaid wages.

## IV.    Plaintiff Fails to State a Claim for Fraud.

In Count IV of her Complaint, Plaintiff alleges a fraud claim against Defendants for allegedly making "knowingly false representations to [Plaintiff], including promises of meaningful equity, cash bonuses, appropriate role responsibilities, and leadership support." DE 1 at ¶ 82. This claim fails to state a claim for three reasons: (1) Plaintiff has not satisfied the heightened pleading requirements of Rule 9(b), Fed. R. Civ. P.; (2) Plaintiff has failed to allege that Defendants made any of the purported misrepresentations with the intent to deceive her and with no intent to perform the alleged promises; and (3) Plaintiff has not alleged that she relied on the alleged misrepresentations.

First, Plaintiff's fraud claim should be dismissed because the allegations in her Complaint do not satisfy the heightened pleading standards for fraud. In North Carolina, the elements of a fraud claim are: (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive; (4) upon which the plaintiff reasonably relied to her detriment. *Jenkins v. AKZO Noble Coatings, Inc.*, 35 F. App'x 79, 85 (4th Cir. 2002) (citing *Pearce v. Am. Defender Life Ins. Co.*, 316 N.C. 461 (1986)). In the context of fraud claims, Plaintiffs must "state with particularity" the circumstances supporting each of these elements. Rule 9(b), Fed. R. Civ. P. The Fourth Circuit has instructed that this means plaintiffs must plead the "time, place, and contents of the false representations, as well as the identity of the person

making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Plaintiff's Complaint ignores the requirements of Rule 9(b) in their entirety. While Plaintiff broadly alleges that "Defendants" made a host of purported "misrepresentations" and promises "in approximately August 2021" in order to induce her to accept employment with the Company, *see* DE 1 at ¶ 16, she does not provide any detail as to the specific time, place, or content of these representations. Moreover, she has not identified *who* at the Company made these statements, instead only imprecisely attributing the statements to "Defendants." DE 1 at ¶ 16. Importantly, Plaintiff has failed to specify this information even though she herself was the recipient of the alleged misrepresentations—and therefore should know exactly what was said by whom and when. North Carolina courts frequently dismiss similar fraud claims against employers where the employee fails to meet the requirements of Rule 9(b) as Plaintiff has done here,[7] and this court should do the same.

<u>Second</u>, Plaintiff's fraud claim against Defendants should be dismissed because she has failed to allege that Defendants made any of the supposed misrepresentations with the intent to deceive her and with no intention of fulfilling their promises. Plaintiff alleges that during pre-employment discussions, Defendants made several generic promises regarding her employment, such as that they would provide her with "full support," "comply with [FlyExclusive's] EEO and other legal, moral, and ethical obligations," implement their alleged promises in "good faith," DE 1 at ¶ 16, and that Segrave promised her a bonus in September 2023 that Plaintiff allegedly never

---

[7] *See, e.g.*, *Macregen, Inc. v. Burnette*, No. 1:19-CV-591, 2021 WL 2682050, at *8 (M.D.N.C. June 30, 2021) (dismissing fraud claim where employee did not allege who made misrepresentations and when, even though plaintiff himself "was the recipient of these representations"); *New v. Thermo Fisher Sci., Inc.*, No. 1:19-CV-807, 2020 WL 4572740, at *8 (M.D.N.C. Aug. 7, 2020) (same); *Wilson v. Popp Yarn Corp.*, 680 F. Supp. 208, 214 (W.D.N.C. 1988) (employee's fraud allegations based on vague statements about the employer's "general business" were "not set out with any specificity at all").

received.  DE 1 at ¶ 22.  But in North Carolina, a fraud claim premised on a future promise can proceed only where the promise is "made with the intent to deceive and the promisor has no intent of performing his promise."  *Liggett Grp., Inc. v. Sunas*, 113 N.C. App. 19, 30 (1993); *see also Jenkins*, 35 F. App'x at 86.  Plaintiff has not alleged facts in her Complaint supporting the assertion that Defendants never intended to fulfill these promises, instead only including a conclusory allegation that Defendants "never intended to honor these and other representations."  DE 1 at ¶¶ 17, 24.  As such, her fraud claim must be dismissed.  *See Altaweel v. Longent, LLC*, No. 5:19-CV-573-FL, 2022 WL 1463059, at *11 (E.D.N.C. May 9, 2022) (holding employee failed to establish fraud claim where there was no evidence that the employer made promises "without the intention of fulfilling them").

Third, Plaintiff has not alleged that she relied on any of Defendants' misrepresentations. Although Plaintiff claims that Defendants' promises induced her to accept a position with FlyExclusive, *see* DE 1 at ¶ 19, she continued to work for the Company for almost *three years* after this, despite Defendants allegedly "repeatedly fail[ing] to fulfill" their promises.  DE 1 at ¶ 27.  Likewise, Plaintiff continued to work for FlyExclusive for almost seven months after Segrave allegedly promised to pay her a bonus based on the SPAC transaction. DE 1 at ¶¶ 22, 50. Plaintiff has not alleged that she gave up other job opportunities or offers because of these promises, or that she otherwise took any action in reliance on these alleged representations.  In similar cases, courts have held that at-will employees failed to establish reliance where they remained employed for years after the employer made the alleged false statement.  For example, in *Briggs v. Mid-State Oil Co.*, 53 N.C. App. 203, 209 (1981), employees sued for fraud after they were denied severance pay, alleging that they were promised severance if their jobs were terminated.  The North Carolina Court of Appeals dismissed the fraud claim, holding that the

plaintiffs failed to establish reliance because at most, "a promise of severance pay may have caused them to forego looking for, or accepting, a new job," but there was "neither particular allegation nor specific evidence that [the employees] gave up either one of these actions or anything else" as a result of the employer's promises. *Id.*; *see also Jenkins*, 35 F. App'x at 86 (holding that plaintiff failed to establish reliance because he did not have any evidence that but for the allegedly false statements, he would have quit his job). Thus, Plaintiff's fraud claim against both Defendants should be dismissed for the additional reason that Plaintiff has not and cannot establish reliance.[8]

Indeed, given the generic nature of the purported "misrepresentations" pled by Plaintiff, Plaintiff's fraud claim constitutes little more than an effort to drive a Mack-truck-sized hole through the at-will employment doctrine. Put differently, if any at-will employee in North Carolina can assert a valid fraud claim simply by pleading that the employee unilaterally determined, over two years after hire, that their employer failed to adequately live up to (for example) their purported pre-hire promise to give the employee their "full support," then the concept of at-will employment will effectively cease to exist.

## V. Plaintiff Fails to State a Claim for Negligent Misrepresentation.

In the alternative to her fraud claim, Plaintiff alleges in Count V that Defendants negligently misrepresented information regarding her "compensation, authority, and advancement opportunities." DE 1 at ¶ 89. This claim is deficient for the same reasons as Plaintiff's fraud claim

---

[8] Plaintiff's fraud claim fails for the additional reason that it is barred, at least in part, by the statute of limitations. In North Carolina, the statute of limitations for fraud is three years and begins to run "from the date the fraud was, or reasonably should have been, discovered." *Walton v. Carolina Tel. & Tel. Co.*, 93 N.C. App. 368, 378 (1989) (citing N.C. Gen. Stat. Sec. 1-52(9)). Here, the statements Defendants allegedly made to Plaintiff during pre-employment discussions occurred in August 2021, almost *four* years before Plaintiff filed her Complaint in June 2025. *See* DE 1 at ¶ 16. Furthermore, Plaintiff has not identified anywhere in her Complaint when she allegedly "discovered" the fraud. As such, her fraud claim should be dismissed as untimely. *See Jackson v. Minnesota Life Ins. Co.*, 275 F. Supp. 3d 712, 722 (E.D.N.C. 2017) (dismissing untimely fraud claim pursuant to Rule 12(b)(6)).

22

and similarly must be dismissed. First, negligent misrepresentation claims under North Carolina law, like fraud claims, are subject to the heightened pleading requirements of Rule 9(b). *Value Health Sols., Inc. v. Pharm. Research Assocs., Inc.*, 385 N.C. 250, 266 (2023). Thus, for the reasons described in Section IV above, Plaintiff's negligent misrepresentation claim must be dismissed for failure to allege with particularity the misrepresentations at issue. *Id.* (dismissing negligent misrepresentation claim where complaint did not allege "the time, place, speaker, or the specific contents of the alleged misrepresentation").

Second, in order to state a negligent misrepresentation claim under North Carolina law, Plaintiff must show that (1) she justifiably relied (2) to her detriment (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care. *Simms v. Prudential Life Ins. Co. of Am.*, 140 N.C. App. 529, 532 (2000). As described in Section IV, Plaintiff has failed to allege that she relied on any of the misrepresentations at issue and indeed chose to continue her employment with FlyExclusive long after Defendants allegedly made the false statements to her. Lastly, as with fraud, a promise "cannot constitute a merely negligent misrepresentation," because it is a "statement of intention, not fact, meaning it is false only if the promisor never honestly intended to carry it out." *Trana Discovery, Inc. v. Southern Research Inst.*, 915 F.3d 249, 254 (4th Cir. 2019). As described above, Plaintiff has not alleged facts showing that Defendants never intended to fulfill the promises made during pre-employment discussions with Plaintiff. For these reasons, the Court should dismiss her negligent misrepresentation claim in Count V.

## VI. Plaintiff Fails to State a Breach of Contract Claim.

Plaintiff has likewise failed to state valid claim for breach of contract. In Count VI, Plaintiff alleges that she and FlyExclusive had "enforceable contractual agreements" concerning her "compensation and bonus payments." DE 1 at ¶ 95. In North Carolina, the elements of a

breach of contract claim are "(1) existence of a valid contract and (2) breach of the terms of that contract." *Schlieper v. Johnson*, 195 N.C. App. 257, 265 (2009). Accordingly, to survive a motion to dismiss, a plaintiff must allege not only that a contract exists, but also must include in the complaint the "specific provisions breached." *Dillon v. Leazer Grp., Inc.*, 374 F. Supp. 3d 547, 555 (E.D.N.C. 2019). This is because a valid contract exists only where there is a "meeting of the minds," which requires "an offer and acceptance of the same terms," *Walker v. Goodson Farms, Inc.*, 90 N.C. App. 478, 486 (1988). In other words, "[i]f any portion of the proposed terms is not settled . . . there is no agreement." *Chappell v. Roth*, 353 N.C. 690, 692 (2001). Similarly, the mere expression of an intention or desire is not a "promise" and does not create any binding contractual obligation on the part of the alleged promisor. *Bowman v. Hill,* 45 N.C. App. 116, 117–18, 262 S.E.2d 376, 377 (1980).

Here, Plaintiff's Complaint fails to include the definite terms of the alleged contract, any allegations that Plaintiff accepted any alleged "offer" made the Company, or any facts demonstrating the "specific provisions [that were] breached." *Dillon*, 374 F. Supp. 3d at 555. Instead, Plaintiff only alleges that Segrave made a broad statement that she would receive $50,000, that she would be given the "50% bonus opportunity [that] will be largely based on profitability and partly based on deliverables," and that Segrave stated that he "intended" to give Plaintiff and others "equity in the form of stock at closing." DE 1 at ¶¶ 22. But Plaintiff has not alleged: 1) whether she accepted this alleged "offer;" 2) any contract terms establishing when she would receive the alleged payments; 3) how the Company would calculate her "bonus opportunity" based on "profitability" and "deliverables;" 4) what performance would be required of her to earn the bonus "opportunity;" 5) the quantity of equity or "cash" she would receive; or 6) any other details regarding the "promised compensation" she claims she was owed. DE 1 at ¶ 96. Furthermore,

even if the terms of Segrave's September 2023 email were somehow sufficiently definite to constitute an offer, Plaintiff has not alleged the specific terms of the offer that were allegedly breached, how the terms were allegedly breached, or whether Plaintiff satisfied all conditions precedent to earn the alleged compensation at issue. For example, Plaintiff has not included any facts establishing that she in fact satisfied the conditions for her "bonus opportunity" by meeting the Company's unspecified profitability and deliverable metrics, or whether she accepted this offer at all. As such, the Complaint does not establish that there was any "meeting of the minds," leaving the key terms of the contract "not settled." *Chappell*, 353 N.C. at 692. FlyExclusive respectfully requests that that Court dismiss Plaintiff's breach of contract claim for failure to state a claim.

## VII.    Plaintiff Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiff also asserts a separate claim in Count VII of the Complaint against FlyExclusive for breach of the covenant of good faith and fair dealing. This claim must be dismissed because there is no independent cause of action for breach of this covenant under North Carolina law. As this Court has repeatedly held, "a claim for breach of the covenant of good faith and fair dealing . . . is not a claim that can exist independently of a breach of contract claim." *Great Am. Emu Co., LLC v. E.J. McKernan Co.*, 509 F. Supp. 3d 528, 543 (E.D.N.C. 2020) (internal quotations omitted); *see also Liris S.A. v. Morris & Assoc., Inc.*, 496 F. Supp. 3d 931, 943 (E.D.N.C. 2020). Instead, North Carolina recognizes a "separate claim for breach of an implied covenant of good faith and fair dealing only in limited circumstances," including "contracts for funeral services and insurance"—but not in contracts for employment. *Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co.*, 359 F. Supp. 3d 306, 313–14 (E.D.N.C. 2019). And "[o]utside of such circumstances, actions for breach of good faith fail." *Ada Liss Grp. (2003) v. Sara Lee Corp.*, No. 1:06-CV-610, 2009 WL 3241821, at *13 n.10 (M.D.N.C. Sept. 30, 2009). On this basis alone,

Plaintiff's cause of action in Count VII must be dismissed. And, in any event, "when a court rejects a breach of contract claim, it likewise rejects any claim for breach of the covenant of good faith and fair dealing contained in the contract." *Michael Borovsky Goldsmith LLC*, 359 F. Supp. 3d at 313. As described above, Plaintiff's contract claim fails to state a claim, and thus, so too does her corresponding claim for breach of the covenant of good faith and fair dealing.

## VIII. Plaintiff Fails to State an Unjust Enrichment Claim.

Plaintiff's unjust enrichment claim against Defendants in Count VIII of the Complaint likewise fails to state a claim. As an initial matter, this count must be dismissed because Plaintiff cannot proceed on both a breach of contract theory and an unjust enrichment theory. It is black letter law that "[w]here a breach of contract is asserted, the express contract governs the claim and the law does not permit assertion of an unjust enrichment claim on the same basis." *Great Am. Emu Co.*, 509 F. Supp. 3d at 538. This is because a claim for unjust enrichment is a "claim in quasi contract or a contract implied in law," and if there is an express contract between the parties, "the contract governs the claim and the law will not imply a contract." *Rev O, Inc. v. Woo*, 220 N.C. App. 76, 81 (2012). Here, Plaintiff has pleaded the existence of an express contract in Count VI, and she has not pleaded her unjust enrichment claim in Count VIII in the alternative to her breach of contract claim in Count VI. This Court should therefore dismiss her independent unjust enrichment claim. *See Great Am. Emu Co.*, 509 F. Supp. 3d at 538 (dismissing "assertion of unjust enrichment as an independent claim" where plaintiff failed to plead it in the alternative).

Even if Plaintiff did plead Count VIII in the alternative to her breach of contract claim, it would nevertheless fail because she cannot allege that Defendants were unjustly enriched by her provision of services. Plaintiff alleges that Defendants were unjustly enriched by the services she performed through her "leadership and contributions" including during the SPAC transaction. DE

1 at ¶ 109. But Plaintiff cannot establish that any alleged "enrichment" by Defendants resulting from Plaintiff's services was "unjust." In North Carolina, if an employee is paid a salary for services she provides, she cannot successfully maintain a claim that her employer was unjustly enriched by her provision of services. *See Dulaney v. Inmar, Inc.*, 220 N.C. App. 415, 725 S.E.2d 473, at *4 (2012) (table decision) (concluding that plaintiff's claims related to employer's alleged failure to pay a bonus failed, because the defendant was not unjustly enriched by plaintiff performing a job for which she was paid a salary). Here, Plaintiff has not alleged that Defendants failed to pay her the base salary to which she was entitled. Instead, she claims that Defendants unjustly benefitted by neglecting to pay her an unspecified "appropriate bonus," the terms of which, as described in Sections III and VI, are completely nebulous. Accordingly, as in *Dulaney*, Defendants were not unjustly enriched by Plaintiff's services—for which Defendants at all times paid Plaintiff a salary. *See also McCabe*, 47 F. Supp. 3d at 349 (dismissing unjust enrichment claim where "[Defendant] was not unjustly enriched by [Plaintiff] performing the job she was paid a salary to perform."); *Beatty v. PruittHealth Inc.*, No. 1:21-CV-818, 2024 WL 4266775, at *3 (M.D.N.C. Sept. 23, 2024) (same). Dismissal of Count VIII is therefore proper here.

IX.    **Plaintiff Fails to State a Tortious Interference Claim.**

Plaintiff's tortious interference claim against Segrave in Count IX of the Complaint is also deficient. Under North Carolina law, to state a claim for tortious interference with a contract, Plaintiff must allege: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988). Plaintiff has failed to adequately plead the first, third, and

fourth elements of the claim here.

First, Plaintiff's tortious interference claim against Segrave fails because she has not alleged that a valid contract exists between herself and FlyExclusive. Plaintiff vaguely asserts that "a valid and binding employment contract and/or other employment relationship" existed between the parties. DE 1 at ¶ 116. But as described in Section VI, Plaintiff has not alleged any definite terms of the purported contract. In other words, Plaintiff's Complaint lacks facts demonstrating that the parties had a "meeting of the minds." *Walker*, 90 N.C. App. at 486. Thus, her tortious interference claim should be dismissed because she has not satisfied the basic requirement of demonstrating that a valid contract existed or that it was breached.

Second, the Complaint fails to allege facts supporting the third element of a tortious interference claim—that Segrave intentionally induced FlyExclusive to breach the alleged contract. Plaintiff includes conclusory statements that Segrave "direct[ed] subordinates to ignore [her] compensation inquiries," "actively block[ed] her from being promoted," and "den[ied] her the equity and compensation she had been promised." DE 1 at ¶ 117. But Plaintiff has not pointed to any facts supporting these assertions as required to nudge her claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. For example, Plaintiff has not explained when or how Segrave "direct[ed] subordinates" to ignore her, nor has Plaintiff alleged that Segrave played a role in any decision not to promote Plaintiff (which, to be clear, cannot form the basis for a tortious interference claim in any event, as FlyExclusive did not have any contractual obligation to promote Plaintiff). Plaintiff's Complaint therefore fails to establish the third element of her tortious interference claim.

Similarly, Plaintiff has vaguely alleged that Segrave is liable for FlyExclusive's purported failure to pay Plaintiff owed wages pursuant to the NWHA, because as CEO Segrave "possessed

substantial control over Ms. Maddison's terms and conditions of employment." DE 1 at ¶ 71. Plaintiff cannot have her cake and eat it too. Assuming the truth of Plaintiff's allegation that Segrave was responsible for dictating the terms and conditions of her employment as the CEO of FlyExclusive, as a matter of law Segrave *cannot induce himself* to take or not take some action on behalf of the Company. *See, e.g., Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 827 S.E.2d 458 (2019) (holding that inducement element requires purposeful action intended to influence the party not to perform). For all of the reasons, Plaintiff has failed to adequately plead the purposeful inducement element of a tortious interference claim.

<u>Third</u>, Plaintiff has not alleged facts supporting the fourth element of her tortious interference claim, which requires her to show that any interference by Segrave was unjustified. In North Carolina, officers of an organization with whom a plaintiff has contracted are considered "non-outsiders" to the contract. *Benjamin v. Sparks*, 173 F. Supp. 3d 272, 289 (E.D.N.C. 2016). And it is well-established that "[g]enerally, acts of non-outsiders, such as officers of the employing organization, 'are presumed to have been done in the interest of the Corporation,' and are therefore 'justified.'" *Id.* (quoting *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498–99 (1992)). To overcome this presumption, plaintiffs must show that the officer took the challenged action for an improper reason motivated by malice. *Id.* Otherwise, the officer's actions "carry a presumption of validity" and cannot support a tortious interference claim. *Id.*

For example, in *Benjamin v. Sparks*, this Court dismissed an employee's tortious interference claim against the chairman of a foundation alleging that the chairman interfered with the plaintiff's employment contract with the foundation. *Id.* The court explained that because the chairman was a non-outsider and had a "legitimate business interest in the Foundation and in its staffing decisions," the plaintiff was required to plead that he interfered with the contract "solely

for discriminatory or retaliatory purposes." *Id.* Because the plaintiff's complaint lacked such allegations, the court dismissed the tortious interference claim. Here, as in *Benjamin*, Plaintiff has not alleged facts in the Complaint demonstrating that Segrave, a non-outsider to the contract, interfered with her contract for malicious purposes.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order granting their Motion to Dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted this the 30th day of September, 2025.

WYRICK ROBBINS YATES & PONTON LLP

By: /s/ T. Cullen Stafford
T. Cullen Stafford
N.C. State Bar No. 48872
cstafford@wyrick.com
Alice Y. Magnuson
N.C. State Bar No. 53720
amagnuson@wyrick.com
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607-7525
Telephone: (919) 781-4000
*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2025, I caused a copy of the foregoing MOTION TO DISMISS to be filed electronically using the Court's CM/ECF system, which will send electronic notice to all parties of record:

EDWARDS BEIGHTOL, LLC

Catharine E. Edwards
N.C. State Bar No. 52705
cee@eblaw.com
Nicholas J. Sanservino
N.C. State Bar No.36557
njs@eblaw.com
P.O. Box 6759
Raleigh, NC 27628
Telephone: (919) 636-5100
*ATTORNEYS FOR PLAINTIFF*

By: /s/ T. Cullen Stafford
T. Cullen Stafford
N.C. State Bar No. 48872
cstafford@wyrick.com
Alice Y. Magnuson
N.C. State Bar No. 53720
amagnuson@wyrick.com
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607-7525
Telephone: (919) 781-4000
*ATTORNEYS FOR DEFENDANTS*